[648 NYS2d 792]

In the Matter of ALCOTT STAFF LEASING, INC., et al., Appellants, v NEW YORK COMPENSATION INSURANCE RATING BOARD et al., Respondents.

Third Department, October 24, 1996

**APPEARANCES OF COUNSEL**

*Waite & Associates, P. C.,* Albany *(Stephen J. Waite* of counsel), for appellants.

*Stroock, Stroock & Levan,* New York City *(Martin Minkowitz* of counsel), for New York Compensation Insurance Rating Board, respondent.

*Dennis C. Vacco, Attorney-General,* Albany *(Peter G. Crary* of counsel), for Salvatore R. Curiale, respondent.

**OPINION OF THE COURT**

CARDONA, P. J.

This appeal concerns a challenge to a rating rule and form filing application approval (hereinafter rate rule form) which was approved by respondent State Insurance Department (hereinafter the Department) and deals with workers' compensation insurance coverage for employee leasing firms. We initially note that an employee leasing arrangement is generally established when a small business (hereinafter the client) utilizes the services of a leasing firm to provide it with workers

for a fee or other compensation. The client transfers all or most of its employees to the leasing firm and the leasing firm hires these workers. These same employees are then leased back to the client. Employee leasing firms offer small businesses a way to cut benefit costs and relieve themselves of many administrative burdens.

Despite the positive aspects of certain employee benefit arrangements, respondent New York Compensation Insurance Rating Board[1] perceived a problem with these arrangements in reference to the issue of workers' compensation coverage. Specifically, the Rating Board became concerned that, because many of the leasing firms were relatively new and because, in many instances, the leasing firms and not their clients were covered by insurance, the premiums for the leasing firms were artificially low based on their lower risk factor and lower experience rating.[2] Consequently, the Rating Board believed that the insurance carriers were not collecting sufficient premiums to cover incurred losses for injuries sustained by employees who were providing actual services for the clients, not the leasing firms. The Rating Board also had concerns because of the difficulty in verifying the accuracy of data such as the classifications assigned to employees since some leasing firms did not know what kind of work their leased employees were performing, did not have complete employee records and were allegedly unwilling to cooperate with the Rating Board auditors in performing audits of the actual work sites.

Furthermore, the Rating Board noted that the clients, by exercising direction and control over the leased employees, would often be considered by the Workers' Compensation Board as the employers or coemployers of the leased employees and thereby mandated to provide workers' compensation coverage in addition to or instead of the leasing firms (see, Workers' Compensation Law § 10 [1]; § 50). Accordingly, the Rating

1. The Rating Board is an unincorporated association of insurance carriers, including the State Insurance Fund, and is considered a rate service organization pursuant to Insurance Law § 2313. The Rating Board is charged with, *inter alia*, the responsibility of making rates (the formula by which premiums are calculated) and collecting the loss, premium and payroll data from each carrier in order to develop an adequate rate structure for workers' compensation insurance.

2. The experience rating is an index of the frequency and severity of the accidents and claims for compensation for injuries arising out of and in the course of employment. This index is used to reward employers with better loss experience by requiring lower premiums while penalizing those with higher loss experience by requiring higher premiums.

Board, after researching the matter and examining how the issue was dealt with in other States, submitted a proposal in December 1992 to respondent Superintendent of Insurance proposing the subject rate rule form which would authorize insurance carriers to write insurance policies consistent with its suggested new rules for compensation coverage in employee leasing situations. This proposal provided, *inter alia*, that both the client and the leasing firm would be required to provide separate workers' compensation insurance policies.[3] The policies would be connected through two types of endorsements: the New York Labor Contract Endorsement and the New York Labor Contractor Exclusion Endorsement. The endorsements would serve to protect the leasing firm in that if the client allowed its coverage to lapse, the leasing firm's exclusion would also lapse and the leasing firm could then provide benefits to the injured worker.

Thereafter, in March 1993, the Department approved the rate rule form application proposed by the Rating Board and scheduled it to take effect on July 1, 1993. Petitioners, consisting of 21 employee leasing firms, initiated this CPLR article 78 proceeding challenging the contents of the rate rule form on several grounds. Supreme Court dismissed the petition on the merits and this appeal followed.

Initially, we reject petitioners' argument that the Rating Board and Superintendent were without authority to implement the rate rule form. According to petitioners, the Rating Board and Superintendent acted in a legislative capacity outside the scope of their authority by placing the burden on clients to obtain a primary workers' compensation insurance policy because such a procedure implicitly presumes the client to be an "employer" when it is the sole province of the Workers' Compensation Board to render such a conclusion. We disagree with this construction. In our view, the formulization of the subject rate rule form, which has the purpose of establishing premiums based on actual risk factors as opposed to

3. Under the proposal, coverage for leased employees would be secured on a multicoordinated basis whereby the leasing firm would coordinate policies for all its clients. The leasing firm would obtain a separate policy for its own nonleased workers and each client would maintain a separate policy which would include its leased and nonleased workers and name the leasing firm as an additional insured. Significantly, the client would retain its own experience rate modification risk factor and this experience would not be combined for rating purposes with the experience of the leasing firm unless common ownership existed.

artificial risk factors, clearly "relate[s] to rate making or to [the] administration of rates" (Insurance Law § 2313 [a]). Therefore, the Rating Board acted within its authority in proposing and recommending the rate rule form. Further, we find that the Superintendent acted within his broad authority in approving the rate rule form and policy form endorsements (*see*, Insurance Law §§ 201, 2303, 2305 [b]; § 2307 [a], [b]; *see generally, Ostrer v Schenck*, 41 NY2d 782).

Significantly, while the rate rule form does require that both the client and the leasing firm obtain workers' compensation insurance, it nonetheless points out within the specific language of the rate rule form itself that if a claim is filed, "a determination may be made by the Workers' Compensation Board * * * that either the client or the [leasing firm] may be construed to be the employer of the claimant". Since the rate rule form does not preclude a finding by the Workers' Compensation Board that *either* the client or the leasing firm is an employer, respondents did not engage in improper legislating. Instead, they acted to address a concern that the risk factor attributed to leased employees was artificially low and insufficient premiums were being paid. Thus, we do not agree that respondents improperly intruded upon the province of the Workers' Compensation Board or exercised power reserved to the Legislature.

■ Finally, petitioners maintain that the subject rate rule form is unconstitutionally vague because the rules therein do not clearly define an "employee leasing arrangement" and do not properly make a distinction between leasing firms and businesses involved in arranging temporary staffing arrangements. Regardless of the merit of this contention, we note that although petitioners raised several broad due process claims in their petition, they failed to raise the void-for-vagueness argument addressed in their papers on appeal. Having failed to raise this issue before Supreme Court, it cannot be raised for the first time on appeal and, therefore, is not appropriate for appellate review (*see, Matter of Town of Minerva v Essex County Indus. Dev. Agency*, 173 AD2d 1054, 1055, *lv denied* 78 NY2d 857; *see also, Matter of Salahuddin v Coughlin*, 222 AD2d 950, 951, *lv denied* 88 NY2d 806, *cert denied* — US —, 117 S Ct 317). Moreover, to the extent that petitioners raise these and other arguments with respect to the rate form rule as it

was amended in 1994,[4] we conclude that petitioners' failure to amend their petition before Supreme Court so as to challenge the amended version of the rate rule form precludes its consideration in this proceeding (*see, Matter of Salahuddin v Coughlin, supra,* at 951).

The remaining arguments advanced by the parties have been examined and found to be without merit or rendered academic by the foregoing determination of the issues.

MERCURE, CASEY, SPAIN and CARPINELLO, JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

4. In January 1994, respondents modified the existing rate rule form, which defined employee leasing as "an arrangement whereby an entity contracts with another entity to lease some or all of its workers", and added language stating that "[t]his rule may not apply where workers are provided on a temporary basis for special work situations such as employee absences, temporary skill shortages, peak workloads or special assignment or projects with a short or limited duration" (emphasis omitted).