AMERICAN EMPLOYERS GROUP, INC., APPELLEE, V.
DEPARTMENT OF LABOR OF THE STATE OF NEBRASKA
AND FERNANDO LECUONA III, COMMISSIONER OF LABOR
OF THE STATE OF NEBRASKA, APPELLANTS, AND
GARY JAMES TUCKER, APPELLEE.

617 N.W.2d 808

Filed September 22, 2000.    No. S-00-030.

John F. Sheaff and John H. Albin for appellant Fernando Lecuona III.

Jeffrey A. Silver for appellee American Employers Group, Inc.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## I. NATURE OF CASE
The Department of Labor of the State of Nebraska and Fernando Lecuona III, Commissioner of Labor of the State of Nebraska (collectively referred to as "the Department"), appeal from the memorandum and order of the district court for Douglas County. The district court reversed the decision of the Nebraska Appeal Tribunal and concluded that American Employers Group, Inc. (AEG), was an "employee leasing company" within the meaning of Neb. Rev. Stat. § 48-602(11) (Reissue 1998) of the Nebraska unemployment compensation statutes and that AEG was, therefore, the former employer of Gary James Tucker for unemployment compensation purposes. The district court further determined that Tucker's employment with AEG was terminated as a result of misconduct in connection with his work and that pursuant to Neb. Rev. Stat. § 48-628(2) (Reissue 1998), Tucker was disqualified from receiving unemployment compensation benefits.

In this appeal, we are asked to construe the definition of "employee leasing company" under § 48-602(11) and apply such definition to the facts of this case. We conclude that the district court's decision that AEG was an employee leasing company, and therefore the employer of Tucker, does not conform to the law and is not supported by competent evidence. Further,

because AEG was not Tucker's employer, there could be no termination for misconduct of Tucker's employment by AEG. We reverse the order of the district court and remand the cause with directions to the district court to determine if Tucker is entitled to unemployment compensation benefits with or without disqualification as to his employer, M & O Industries, Inc. (M & O).

## II. STATEMENT OF FACTS

Tucker worked as a mechanic for M & O from approximately April 15 to June 16 or 17, 1999. M & O is in the business of golf cart sales and repair. Delbert Smock, the owner of M & O, interviewed and hired Tucker after advertising the position with the Nebraska Job Service. Smock supervised Tucker's daily work activities. Following an incident on June 15, Smock fired Tucker.

M & O paid AEG to perform payroll and recordkeeping services, including tax services for unemployment insurance taxes. AEG also provided personnel services, including making group health insurance available to employees of M & O. As discussed in greater detail below, AEG asserts that by virtue of these services, it is an "employee leasing company" as defined under § 48-602(11), and that consequently, it was Tucker's employer on June 15, 1999. The district court agreed with AEG and concluded that because "services such as those involved here" were provided by AEG to M & O, AEG was an "employee leasing company" and hence, Tucker's employer.

On June 15, 1999, Smock instructed Tucker to take M & O's truck and transport a golf cart to Glenwood, Iowa, 25 miles south of M & O's place of business. Tucker was to drop off the golf cart in Glenwood and pick up another golf cart in need of repair. However, instead of driving to Glenwood, Tucker drove 50 miles east to Griswold, Iowa, where he was involved in a traffic accident. As a result of the traffic accident, Tucker was injured and M & O's truck was destroyed. M & O was required to pay $1,000 for damage Tucker caused to a highway guardrail and $200 for the services of the rescue squad that took Tucker to the hospital. Following the accident, Smock talked to Tucker to determine why Tucker went to Griswold instead of Glenwood.

When Tucker was unable to explain his actions, Smock terminated his employment.

Following Tucker's termination of employment, he filed for unemployment compensation benefits on or about June 20, 1999, with the Nebraska Department of Labor Unemployment Insurance Division (unemployment division). In Tucker's claim for benefits, he listed M & O as his employer. The record indicates that the unemployment division sent a "Request to Employer for Separation Information" form to M & O, which form M & O did not complete. The unemployment division sent the same form to AEG.

AEG completed the form and indicated that Tucker voluntarily quit his employment, with no reason given. On July 13, 1999, AEG amended its response to indicate that Tucker was discharged from employment for damaging the company vehicle and failing to follow orders. Later, AEG again amended its response by stating that Tucker was discharged for failing to follow instructions and by explaining that Tucker had been instructed to go to Glenwood and instead went to Griswold, where he was involved in a traffic accident. Certain notes of the unemployment division included in the record indicate that Tucker stated in a telephone conversation with the unemployment division investigator that the accident was the result of a diabetic seizure.

On July 23, 1999, the unemployment division notified Tucker of the claims deputy's determination that Tucker's discharge from employment had not been shown to be due to misconduct and that Tucker was allowed unemployment benefits with no disqualification. In its determination, the unemployment division listed AEG as the employer.

On July 30, 1999, AEG mailed a letter requesting an appeal of the deputy's determination to the Nebraska Appeal Tribunal. In its letter, AEG claimed that Tucker had been discharged for misconduct. The appeal tribunal heard the appeal telephonically on August 20. AEG appeared at the hearing. Smock testified as a witness on behalf of AEG, but M & O did not enter an appearance separate from AEG at the hearing. Although notified of the hearing, Tucker failed to be available at the telephone number he had provided for hearing purposes and, thus, did not appear.

During the telephonic hearing before the Nebraska Appeal Tribunal, Smock testified that Tucker had been an employee of M & O. Smock testified that he had hired, supervised, and fired Tucker and that AEG was not involved in the decisions either to hire or to fire Tucker. Smock testified, and the parties do not dispute, that Tucker's paychecks were issued by AEG and that AEG performed various personnel, payroll, and tax services. Smock testified that Tucker "was an employee of mine" and responded "yes" when asked if Tucker was employed by M & O. Smock further testified: "I own a company, and I lease my employees out to American Employer's [sic]." The only evidence tending to support AEG's position that AEG employed Tucker was a statement from Smock, who testified before the appeal tribunal that "[t]echnically," AEG was Tucker's employer. However, in response to a question as to what he meant by "technically," Smock clarified that AEG "provide[s] a payroll service, and the term that I use is like I [M & O] lease my employees to them [AEG]."

On August 25, 1999, the appeal tribunal issued its decision, in which it affirmed as modified the claims deputy's decision. The appeal tribunal determined that the employment relationship was between Tucker and M & O. The appeal tribunal further determined that there was no employment relationship between Tucker and AEG and that because AEG was not Tucker's employer, there could not be an adjudication of separation of employment between Tucker and AEG. To the extent that the claims deputy had determined that Tucker would be entitled to unemployment compensation benefits without disqualification, that determination was affirmed.

AEG filed its petition for review of the appeal tribunal's decision to the district court for Douglas County, pursuant to Neb. Rev. Stat. § 84-917 (Reissue 1999), arguing that the appeal tribunal erred in its determination that AEG was not Tucker's employer and further erred in failing to determine that Tucker had been discharged for misconduct.

AEG's petition came on for hearing on December 1, 1999. The Department and AEG appeared at the hearing and submitted briefs. The district court received evidence consisting of a transcript of the proceedings before the unemployment division,

the bill of exceptions before the appeal tribunal, and a summons addressed to Tucker sent by certified mail and returned as undeliverable. The district court took judicial notice of the district court's pleadings, as well as the legislative history of 1992 Neb. Laws, L.B. 879. L.B. 879 amended Nebraska's unemployment compensation statutes by adding, inter alia, a definition of an "employee leasing company" for purposes of the unemployment compensation statutes and by establishing certain requirements for the payment of unemployment compensation insurance by employee leasing companies. See § 48-602(11) and Neb. Rev. Stat. § 48-648(3) (Reissue 1998).

On December 9, 1999, the district court entered its memorandum and order, which reversed the decision of the Nebraska Appeal Tribunal. The district court concluded that AEG was an "employee leasing company" as defined under § 48-602(11) of the unemployment compensation statutes and, as such, was Tucker's employer at the time Tucker was discharged. The district court also determined that Tucker had been discharged from employment due to misconduct and should be disqualified from receiving unemployment benefits under § 48-628(2).

In its memorandum and order, the district court stated that the definition of "employee leasing company" in § 48-602(11) contained a self-contradictory term of "leased employee." The district court stated: "[A] 'leased employee', seems to be [a] self-contradictory term — someone over whom the [employer] has control, but doesn't have control." The district court concluded that the definition of "employee leasing company" in Nebraska's unemployment compensation statutes was "ambiguous, and self-contradictory." The district court, therefore, resorted to the legislative history of § 48-602(11) to interpret the statute.

The district court quoted testimony offered in support of L.B. 879, in which it was stated that an employee leasing company "is basically a company that's organized to perform the personnel services for a number of smaller companies. It allows a small company to take advantage of a larger group of employees . . . ." Following the district court's review of the legislative history, it determined that the Legislature intended that when an entity provided for the "pooling of resources" such as payroll

and personnel services, such entity was an "employee leasing company" under § 48-602(11) and, therefore, was an employer for unemployment compensation purposes. Upon its review of the record, the district court found "services such as those" had been provided by AEG in the instant case. The district court concluded that because AEG provided payroll and personnel services, AEG was an "employee leasing company" under § 48-602(11) and that, therefore, AEG was Tucker's employer for unemployment compensation benefit purposes. The district court further concluded that Tucker's employment with AEG was terminated for misconduct and that Tucker should be disqualified from receiving unemployment benefits under § 48-628(2).

The Department appeals the district court's order. Additional facts necessary for the resolution of this appeal will be set forth in the analysis below.

### III. ASSIGNMENTS OF ERROR

On appeal, the Department has assigned three errors which combine to form two. The Department claims that the district court erred (1) in concluding that AEG was an "employee leasing company" within the meaning of §§ 48-602(11) and 48-648(3) and was, therefore, Tucker's employer and (2) in determining that Tucker was discharged from employment with AEG for misconduct in connection with work.

### IV. STANDARDS OF REVIEW

Review of decisions regarding unemployment compensation by the appeal tribunal are governed by the Administrative Procedure Act (APA). See, Neb. Rev. Stat. §§ 48-638 and 48-640 (Reissue 1998); *Concordia Teachers College v. Neb. Dept. of Labor*, 252 Neb. 504, 563 N.W.2d 345 (1997). Under the APA, the district court reviews the appeal tribunal's decision without a jury de novo on the record. § 84-917. A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Neb. Rev. Stat. § 84-918 (Reissue 1999); *Douglas Cty. Sch. Dist. 001 v. Dutcher*, 254 Neb. 317, 576 N.W.2d 469 (1998); *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995).

■ When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Douglas Cty. Sch. Dist. 001 v. Dutcher, supra; Dillard Dept. Stores v. Polinsky, supra.* An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Father Flanagan's Boys' Home v. Agnew*, 256 Neb. 394, 590 N.W.2d 688 (1999). Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Board of Regents v. Pinzon*, 254 Neb. 145, 575 N.W.2d 365 (1998); *Dillard Dept. Stores v. Polinsky, supra.*

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Estate of Emery*, 258 Neb. 789, 606 N.W.2d 750 (2000).

## V. ANALYSIS

### 1. EMPLOYER

On appeal, the Department claims that the record fails to establish that AEG is an "employee leasing company" under the unemployment compensation statutes and that, therefore, AEG is not Tucker's employer. In response, AEG argues that the record demonstrates that it is an "employee leasing company" under the unemployment compensation statutes and is, therefore, Tucker's employer. The parties agree that AEG's status as Tucker's employer is dependent upon AEG's satisfying the definition of an "employee leasing company" set forth in the unemployment compensation statutes.

### (a) Decision Does Not Comport With Law

The definition of an "employee leasing company" for unemployment compensation purposes is found at § 48-602(11). Section 48-602(11) provides that an "[e]mployee leasing company shall mean an independently established business entity

which engages in the business of providing leased employees to a client-lessee. Client-lessee shall mean any other employer, individual, organization, partnership, limited liability company, corporation, or other legal entity."

Section 48-648(3), which sets forth the unemployment compensation tax liability of an employee leasing company, provides, inter alia, as follows:

> An employee leasing company which places employees of a client-lessee on its payroll and leases such employees to the client-lessee on an ongoing basis for a fee shall be liable for the combined tax on wages paid by the employee leasing company to employees performing services for client-lessees at the combined tax rate for the employee leasing company.

Section 48-648(3) of the unemployment compensation statutes is consistent with the definition of "employee leasing company" found at § 48-602(11).

On appeal, the parties disagree as to whether, under the undisputed facts of this case, the district court erred when it concluded that AEG meets the definition of an "employee leasing company" under § 48-602(11) of the unemployment compensation statutes. We conclude as a matter of law that the decision of the district court concluding that because AEG performed various personnel and payroll services, AEG was an employee leasing company does not conform to the law, and we, therefore, reverse the order of the district court and remand the cause with directions to reinstate the decision of the appeal tribunal.

In construing "employee leasing company" under the unemployment compensation statutes, we are guided by fundamental rules of statutory interpretation. We have stated that when reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999).

AEG claims on appeal that the definition of "employee leasing company" is ambiguous and urges us to refer to the legislative history of this definitional section to interpret the meaning of the phrase. We have previously stated, however, that in

order for this court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous. *Ameritas Life Ins. v. Balka*, 257 Neb. 878, 601 N.W.2d 508 (1999). In the absence of ambiguity, courts must give effect to statutes as they are written. *Id.* If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Id.*

The definition of an "employee leasing company" contained in § 48-602(11) is *not* ambiguous. Section 48-602(11) plainly states that to be an employee leasing company, such entity shall be engaged "in the business of *providing leased employees to a client-lessee.*" (Emphasis supplied.) A client-lessee is a second entity, such as a company or corporation. As a requisite matter, for an entity to be denominated an employee leasing company under § 48-602(11), it must be in the business of leasing employees to another entity. Other provisions of the unemployment compensation statutes are consistent with this construction. See, e.g., § 48-648(3). Thus, as a matter of law, where an entity does not provide leased employees to a client-lessee, regardless of whatever other functions such entity may perform, it is not an employee leasing company under § 48-602(11).

Section 48-602(11) and our construction of the Nebraska statutory definition of an "employee leasing company" comport with the generally accepted definition of an employee leasing company. One court has described the employee leasing arrangement as follows:

> [A]n employee leasing arrangement is generally established when a small business (hereinafter the client) utilizes the services of a leasing firm to provide it with workers for a fee or other compensation. . . . Employee leasing firms offer small businesses a way to cut benefit costs and relieve themselves of many administrative burdens.

*Alcott Staff Leasing v. NY Comp. Ins.*, 224 A.D.2d 54, 55-56, 648 N.Y.S.2d 792, 793 (1996). See, also, *Ashlin Transp. Serv. v. Indiana Unemp.*, 637 N.E.2d 162 (Ind. App. 1994).

A review of statutes in other states shows that those states which have statutorily defined the employee leasing company

for unemployment compensation benefits purposes are generally comparable to § 48-602(11) and in agreement with our construction of an employee leasing company. Under the statutes in other states, it is fundamental to the concept of an employee leasing company that such company leases its employees to the client-lessee. See, e.g., Fla. Stat. Ann. § 468.520(4) (West Cum. Supp. 2000) (defining "employee leasing" as "arrangement whereby a leasing company assigns its employees to a client"); Ga. Code Ann. § 34-8-32(a) (1998) (defining "employee leasing company" as "independently established business entity which engages in the business of providing leased employees to any other employing unit"); Minn. Stat. Ann. § 268.065 (subd. 2) (West Cum. Supp. 2000) (defining "employee leasing firm" as "employer that provides its employees to other persons without severing its employer-employee relationship with the worker for the services performed for the lessee").

In the instant case, the district court concluded that because AEG provided pooled personnel and tax services to M & O, AEG was an employee leasing company under § 48-602(11). This conclusion does not conform to the law. The law in Nebraska is that for an entity to be an employee leasing company, it must, as a threshold matter, be engaged in the business of providing leased employees to a client-lessee. § 48-602(11).

(b) Decision Is Not Supported by Competent Evidence

We have reviewed the record for error on the record as we must. See § 84-918. In this regard, we note that even assuming for purposes of argument that the district court had defined an employee leasing company in a manner which conformed to the law and had reviewed the record de novo for evidence that AEG provided leased employees to M & O, the record contains no competent evidence upon which the district court could have concluded that AEG is an employee leasing company and that AEG was Tucker's employer for unemployment compensation purposes. There is no evidence that AEG is in the business of providing leased employees to client-lessees in general. In particular, there was no competent evidence presented from any of AEG's employees or representatives that Tucker was an employee of AEG who had been leased to M & O. There is no

evidence of a fee-based relationship between M & O and AEG from which it might be inferred that AEG leased employees to M & O. Instead, according to Smock's repeated testimony before the appeal tribunal, it is M & O that leases its employees to AEG, testimony which AEG reiterates in its brief on appeal.

Rather than establishing by competent evidence that AEG was an employee leasing company and thus Tucker's employer, this record shows that Tucker's employer was M & O. Smock testified before the appeal tribunal that Tucker was his employee and that Smock hired, supervised, and fired Tucker. Smock stated that he fired Tucker for failure to follow his order. Smock further testified that AEG was not involved either in the decision to hire Tucker or in the decision to terminate Tucker's employment. AEG issued paychecks to Tucker, but there was no evidence that Tucker was on AEG's payroll. Smock testified that he has never been to AEG's offices, that he does not know where those offices are located, and that he has never had any face-to-face dealings with a representative of AEG. M & O paid to repair the highway guardrail damaged in Tucker's accident, and M & O paid the rescue squad which transported Tucker after the accident. Tucker listed M & O as his employer on his application for unemployment compensation benefits.

Following our review for error on the record, we determine on this record that there is no competent evidence that AEG was an employee leasing company and thus Tucker's employer.

## 2. TERMINATION OF EMPLOYMENT FOR MISCONDUCT

As its second assignment of error, the Department argues that the district court erred in concluding that Tucker's employment with AEG was properly terminated for misconduct. We agree with the Department that such conclusion by the district court was error.

We have determined that on this record, M & O, rather than AEG, was Tucker's employer. Therefore, Tucker was not terminated from employment by AEG, much less terminated from employment by AEG for misconduct. The district court's conclusion that Tucker was properly terminated from employment by AEG for misconduct and therefore disqualified from receiv-

ing unemployment benefits is not supported by competent evidence and must be reversed.

Accordingly, we reverse, and remand to the district court with directions to determine if Tucker is entitled to unemployment compensation benefits with or without disqualification as to his former employer, M & O. See § 48-628(2).

## VI. CONCLUSION

In summary, the district court erred as a matter of law in concluding that AEG was an employee leasing company and Tucker's employer for unemployment compensation benefit purposes merely because AEG performed personnel and payroll services for M & O. Such decision does not comport with the law defining an employee leasing company, § 48-602(11), pursuant to which, as a requisite matter, to qualify as an employee leasing company, an entity must be in the business of providing leased employees to client-lessees. Further, there is no evidence that AEG provided leased employees to M & O in general or that it provided Tucker as a leased employee to M & O in particular, and thus, the district court's decision is not supported by competent evidence. We reverse the decision of the district court and remand this cause to the district court with directions to determine if Tucker is entitled to unemployment compensation benefits with or without disqualification as to his former employer, M & O.

REVERSED AND REMANDED WITH DIRECTIONS.