REQUESTED BY: Mike Hybl, Executive Director
Nebraska Public Service Commission
 INTRODUCTION
The State Natural Gas Regulation Act (Neb. Rev. Stat. §§ 66-1801 to 66-1867 (2009 and Cum. Supp. 2010)) [the "Act"] grants the Nebraska Public Service Commission ["Commission"] "full power, authority, and jurisdiction to regulate natural gas public utilities. . . ." Neb. Rev. Stat. § 66-1804 (2009).[1] Pursuant to the Act, a *Page 2 
jurisdictional utility[2] is authorized to make a "general rate filing"[3] with the Commission requesting a change in rates. Neb. Rev. Stat. § 66-1838 (1), (2) (2009). A jurisdictional utility must provide written notice to each city affected by the proposed rate change at the time a rate application is filed, unless it provides written notice in its initial filing of its intent not to negotiate with the affected cities for an agreed rate. Neb. Rev. Stat. § 66-1838(2), (3) (2009). If a jurisdictional utility determines it will not participate in negotiations, it must inform the Commission of its decision by written notice no later fifteen days after its initial filing. Neb. Rev. Stat. § 66-1838(3) (2009). Affected cities must inform the Commission of their intent to negotiate an agreed rate with the jurisdictional utility within 60 days of the initial filing. Neb. Rev. Stat. § 66-1838(4) (2009). If the Commission receives evidence of intent to negotiate from cities representing more than fifty percent of the ratepayers within the affected cities prior to expiration of this 60 day period, the Commission will certify the case for negotiations. Neb. Rev. Stat. § 66-1838(6) (2009). Subsection (15) of § 66-1838 establishes deadlines for the Commission's final action on a rate application in the event that negotiations between a jurisdictional utility and affected cities fail, or a rate filing is not certified for negotiations. The questions you ask us to address are: When a jurisdictional utility files a general rate application containing notice of its intent not to negotiate with affected cities, (1) Must the Commission take final action on the filing prior to the deadline established in § 66-1838(15)(b), which applies when a rate application is not certified for negotiations; and (2) If the Commission must take final action on the filing within the time allowed under § 66-1838(15)(b), does the 180 day time period for Commission action commence (a) at the expiration of the 60 day period set forth in § 66-1838(4), or (b) from the date of filing by the jurisdictional utility.
 ANALYSIS A. The Negotiation Process and Commission ReviewUnder § 66-1838.
Section 66-1838 contemplates two avenues by which a general rate filing may result in a change in the rates of a jurisdictional utility. The first is by negotiations between the jurisdictional utility and affected cities. Neb. Rev. Stat. § 66-1838(2), (4), (6), (9)-(14) (2009). The second is by Commission review and final action on the rate filing. Neb. Rev. Stat. § 66-1838(15) (2009). Commission review and final action may occur either because: (1) The jurisdictional utility has determined not to participate in negotiations with affected cities for an agreed rate; or (2) Affected cities representing more than fifty percent of ratepayers within the cities do not provide the Commission with written notice of their intent to negotiate within 60 days after the date the rate *Page 3 
application is filed, or provide written notice to the Commission expressly rejecting negotiations prior to expiration of this period. Neb. Rev. Stat. § 66-1838(3)-(5), (7)-(8) (2009).
If the Commission receives resolutions evidencing an intent to negotiate adopted prior to the expiration of the 60 day deadline in § 66-1838(4) from affected cities representing more than fifty percent of ratepayers, the Commission "shall certify the case for negotiation between such cities and the jurisdictional utility and shall take no action upon the rate filing until the negotiation period and any stipulated extension has expired or an agreement on rates is submitted, whichever occurs first." Neb. Rev. Stat. § 66-1838(6) (2009). If negotiations are certified, affected cities and the jurisdictional utility "shall enter into good faith negotiations over [the] proposed rate change." Neb. Rev. Stat. § 66-1838(9) (2009). Negotiations "shall continue for a period not to exceed ninety days after the date of the rate filing, except that the parties may mutually agree to extend such period to a future date certain. . . ." Neb. Rev. Stat. § 66-1838(11) (2009). "If the cities and the jurisdictional utility reach agreement upon new rates, such agreement shall be reduced to writing. . . ." Neb. Rev. Stat. § 66-1838(13) (2009). "Any agreement filed with the [C]ommission shall be presumed in the public interest, and absent any clear evidence on the face of the agreement that it is contrary to the standards and provisions of" the Act, "the agreement shall be approved by the [C]ommission within a reasonable time." Neb. Rev. Stat. § 66-1838(14) (2009).
Subsections (7) and (8) of § 66-1838 establish when rate change review proceedings commence before the Commission when a rate filing is not subject to negotiation. Neb. Rev. Stat. § 66-1838 (7) (2009) provides:
 When (a) the [C]ommission receives notice or has written documentary evidence on file from cities representing more than fifty percent of the ratepayers within the affected cities which notice or documents either expressly reject negotiations or reject such a resolution or (b) the [C]ommission receives written notice from the jurisdictional utility expressly rejecting negotiations, the rate change review by the [C]ommission shall proceed immediately from the date when the [C]ommission makes such a determination or receives such notice.
Subsection (8) of § 66-1838 provides:
 When the sixty-day period provided in subsection (4) of this section has expired without the receipt by the [C]ommission of resolutions from cities representing more than fifty percent of the ratepayers within the affected cities evidencing their intent to negotiate an agreed rate change [ ] with the jurisdictional utility, the rate change [review by the commission] shall proceed immediately from the date when the commission makes such a determination.[4] *Page 4 
Finally, subsection (15) of § 66-1838 establishes the deadlines for Commission review and final action in cases where negotiations fail or a filing is not certified for negotiations:
 (a) Except as provided in subdivision (c) of this subsection, if the negotiations fail to result in an agreement upon new rates, the rates requested in the rate filing shall become final and no longer subject to refund if the commission has not taken final action within two hundred ten days after the date of the expiration of the negotiation period or after the date upon which the jurisdictional utility and the cities file a written agreement that the negotiations have failed and that the rate change review by the commission should proceed as provided in subsection (7) of this section.
 (b) Except as provided in subdivision (c) of this subsection, if the filing is not certified for negotiations, the rate requested in the rate filing shall become final and no longer subject to refund if the commission has not taken final action within one hundred eighty days after the date of the expiration of the sixty-day period provided for in subsection (4) of this section or the date that the commission receives notice or has accumulated written documentary evidence on file from cities representing more than fifty percent of the ratepayers within the affected cities, whichever is earlier, if such notice or documents either expressly reject negotiations or reject such a resolution.
 (c) The commission may extend the deadlines specified in subdivision (a) or (b) of this subsection by a period not to exceed an additional sixty days upon a finding that additional time is necessary to properly fulfill its responsibilities in the proceeding.
 B. When a Jurisdictional Utility Files a General RateApplication Containing Notice of Its Intent Not to Negotiate WithAffected Cities, Must the Commission Take Final Action on the FilingPrior to the Deadline Established in § 66-1838(15)(b), Which AppliesWhen a Rate Application is Not Certified for Negotiations?
Subsection (15) of § 66-1838 establishes deadlines for the Commission's final action on a rate application in the event that negotiations between a jurisdictional utility and affected cities fail, or a rate filing is not certified for negotiations. Subpart (a) of subsection (15) applies "if the negotiations fail to result in an agreement upon new rates. . .", and provides that the rates requested in the filing become final and not subject to refund if the Commission does not take final action within 210 days after expiration of the negotiation period or the date when the jurisdictional utility and affected cities file a written agreement that the negotiations failed and review proceedings should commence before the Commission as set forth in § 66-1838(7). Neb. Rev. Stat. § 66-1838(15)(a). Subpart (b) of § 66-1838 applies if the rate "filing is not certified for negotiations. . .", and provides that the rates requested in the filing become final and not subject to refund if the Commission does not take final action within 180 days after expiration of the 60 day period provided in § 66-1838(4) "or the date the Commission *Page 5 
receives notice or written documentary evidence on file from cities representing more than fifty percent of the ratepayers within the affected cities, whichever is earlier, if such notice or documents either expressly reject negotiations or reject such a resolution." Neb. Rev. Stat. § 66-1838(15)(b) (2009).
The interpretation of § 66-1838(15)(a) is straightforward, as it can apply only when negotiations in fact occur, but fail to result in an agreement. Section 66-1838(15)(b), which applies when negotiations are not certified, can apply either because: (1) Negotiations were possible but affected cities representing more than fifty percent of ratepayers within the cities provided notice of their rejection of negotiations; (2) Negotiations were possible but the 60 day period after the date of filing the rate application expired without affected cities representing more than fifty percent of ratepayers in the cities providing notice of their intent to negotiate; or (3) Negotiations were not possible because the jurisdictional utility provided notice to the Commission of its intent not to negotiate. As you note in your request, one possible construction of § 66-1838(15) is that it is intended to apply only in situations where negotiations are either undertaken or were possible, but were not certified because affected cities either rejected negotiations or failed to provide notice of their intent to negotiate within the time required. In that instance, filings where negotiations are not conducted or are not possible due to a jurisdictional utility's determination not to negotiate are not contemplated by § 66-1838(15), and the deadline for Commission final action in § 66-1838(15)(b) for cases were negotiations are not certified does not apply.
A statute should be construed to "give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense."Piska v. Nebraska Dep't of Social Services,252 Neb. 589, 594, 567 N.W.2d 544, 547 (1997). When construing a statute, it is necessary to "look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it."Henery v. City of Omaha,263 Neb. 700, 705, 641 N.W.2d 644, 648 (2002).
The phrase "filing not certified for negotiations", in its ordinary and popular sense, can reasonably be construed to apply not only to a filing that is not certified because cities either reject negotiations, or fail to meet the 60 day deadline for seeking negotiations, but also to a filing where the jurisdictional utility has expressed its intent not to negotiate. In either case, the result is that the filing is "not certified for negotiations." Thus, the plain meaning of the phrase "filing not certified for negotiations" supports concluding that it applies to all instances where a rate filing is not certified for negotiations, including those filings in which a jurisdictional utility states its intent not to negotiate for agreed rates.
This conclusion is also consistent with the purpose and intent of the deadlines for Commission review and final action in § 66-1838(15). The purpose of the deadlines, whether applied to filings which are subject to failed negotiations or filings that are not certified for negotiations, is to limit the time available for the Commission to take final action on rate applications not resolved by negotiations. The intent of those time limits is to ensure that rate filings which must be reviewed by the Commission are decided in *Page 6 
a timely and expeditious manner. The purpose of providing a limited window for Commission review and action is to ensure that rate filings do not languish for a lengthy period before decision, as the jurisdictional utility is authorized to place filed rates into effect as interim rates within 60 days after filing if negotiations are certified, or 90 days after filing if negotiations are not certified, subject to refund based on the Commission's final action. Neb. Rev. Stat. § 66-1838(10)(a), (b) (2009). The Legislature's establishment of a relatively short time frame for Commission final action in a rate change proceeding serves the purpose of ensuring that, if refunds are due, ratepayers have not been overcharged for an extended period of time. This purpose applies not only to cases in which negotiations fail or are not certified because cities either rejected negotiations or did not meet the 60 day deadline for seeking negotiations, but also to applications where the jurisdictional utility states its intent not to negotiate. Accordingly, we conclude it would be contrary to the intent and purpose of the Legislature's establishment of time deadlines for final Commission action on all filings subject to Commission review to construe § 66-1838(15)(b) not to apply to filings in which negotiations are not certified because the jurisdictional utility has determined not to negotiate.
C. If the Commission Must Take Final Action on a General RateFiling by a Jurisdictional Utility Containing Notice of Its IntentNot to Negotiate With Affected Cities Within the Time AllowedUnder § 66-1838(15)(b), Does the 180 Day Period for Commission FinalAction Commence (a) At the Expiration of the 60 Day Period Set Forthin § 66-1838(4), or (b) From the Date of Filing by theJurisdictional Utility?
Having determined that the time period for Commission final action in § 66-1838(15)(b) applies to general rate filings in which negotiations are not certified due to a jurisdictional utility's notice of its intent not to negotiate, the question which remains is whether the 180 day period for Commission action commences (a) at the expiration of the 60 day period set forth in § 66-1838(4), or (b) from the date of filing by the jurisdictional utility.
"When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." Harvey v. Nebraska Lifeand Health Ins. Guaranty Ass'n,277 Neb. 757, 764, 765 N.W.2d 206, 211 (2009). "In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. . .", and a "court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous." Japp v. Papio-Missouri RiverNatural Resources Dist.,271 Neb. 968, 973, 716 N.W.2d 707, 711 (2006).
The plain language of § 66-1838(15)(b) states that, if a general rate filing is not certified for negotiations, the Commission must take "final action within one hundred eighty days after the date of the expiration of the sixty-day period provided for in subsection (4) of this section or the date that the [C]ommission receives notice or has *Page 7 
accumulated written documentary evidence on file from cities representing more than fifty percent of the ratepayers within the affected cities, whichever is earlier, if such notice or documents either expressly reject negotiations or reject such a resolution." The only triggers for the 180 time period in § 66-1838(15)(b) are either (1) expiration of the 60 day period in § 66-1838(4), or (2) receipt by the Commission of notice of rejection of negotiations from affected cities. We recognize that, in cases in which a jurisdictional utility expresses its intent not to negotiate in its rate filing, this will effectively mean that the 180 day period will commence after expiration of the 60 day period in § 66-1838(4), as the other statutory trigger for the period cannot apply because affected cities cannot reject negotiations in that instance. Nothing in the plain language of § 66-1838(15)(b), however, purports to establish the filing by the jurisdictional utility as the date for commencement of the 180 day period for Commission final action, even if the filing includes notice of the jurisdictional utility's intent not to negotiate. Indeed, in amending the statute in 2003, the Legislature eliminated the previous language in § 66-1838(15)(b) providing that, when negotiations were not certified, the time period for Commission final action was computed from the date of the "filing", changing the time period for Commission final action to either expiration of the 60 day period in § 66-1838(4) or when the Commission receives notice from affected cities of their rejection of negotiations. 2008 Neb. Laws L.B. 1072, § 1 (codified at
Neb. Rev. Stat. § 66-1838(15)(b) (2009)). This indicates the Legislature intended to eliminate the date of filing as establishing the commencement of the period of time allowed under § 66-1838(15)(b) for the Commission to take final action on a rate filing not certified for negotiations.
This conclusion is further supported by comparison of the language utilized in § 66-1838(15)(b) with virtually identical language used in § 66-1838(7). Section 66-1838(7) provides that rate change review proceedings before the Commission commence either "[w]hen (a) the [C]ommission receives notice or has written documentary evidence on file from cities representing more than fifty percent of the ratepayers within the affected cities which notice or documents either expressly reject negotiations or reject such a resolution or (b) the [C]ommission receives written notice from the jurisdictional utility expressly rejecting negotiations. . . ." Neb. Rev. Stat. § 66-1838(7) (2009). While § 66-1838(15)(b), in establishing the 180 day period for Commission final action, includes almost the exact same language contained in subpart (a) of § 66-1838(7) referring to affected cities filing notice of their rejection of negotiations, § 66-1838(15)(b) does not include the language in subpart (b) of § 66-1838(7) referring to review proceedings commencing upon the Commission's receipt of notice from the jurisdictional utility rejecting negotiations. "[T]he legal principle of expressio unius est exclusio alterius (the expression of one thing is the exclusion of the others),. . . recogniz[es] the general principle of statutory construction that an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute." A D Technical SupplyCo., Inc. v. Nebraska Dep't of Revenue,259 Neb. 24, 31, 607 N.W.2d 857, 863 (2000). The inclusion of nearly identical language in subpart (a) of § 66-1838(7) and § 66-1838(15)(b) regarding notice by affected cities rejecting negotiations, and express exclusion of language similar to subpart (b) of § 66-1858(7) (referencing the Commission's receipt of notice *Page 8 
from a jurisdictional utility rejecting negotiations) in § 66-1838(15)(b), indicates the Legislature did not intend the 180 day period for Commission final action to commence when a jurisdictional utility files a rate application with notice of its rejection of negotiations. If the Legislature had intended that the 180 day period for Commission final action commence from the Commission's receipt of notice from a jurisdictional utility of its intent not to negotiate, it would have included the language in § 66-1838(7)(b) regarding notice from the jurisdictional utility in § 66-1838(15)(b).
Finally, we have also examined the legislative history of the 2008 amendment which adopted the language contained in the current version of § 66-1838(15)(b) providing that, if a filing is not certified for negotiation, the rates requested become final if the Commission does not take "final action within one hundred eighty days after the date of the expiration of the sixty-day period provided for in subsection (4) of this section or the date that the commission receives notice or has accumulated written documentary evidence on file from cities representing more than fifty percent of the ratepayers within the affected cities, whichever is earlier, if such notice or documents either expressly reject negotiations or reject such a resolution." 2008 Neb. Laws L.B. 1072, § 1 (codified at
Neb. Rev. Stat. § 66-1838(15)(b) (2009)). When originally enacted as part of the Act in 2003, § 66-1838(15)(b) mirrored § 66-1838(15)(a), in that it provided that, if a filing was not certified for negotiations, the rates requested became final unless the Commission took "final action within two hundred ten days after the date of the filing." 2003 Neb. Laws, L.B. 790, § 38 (codified at
Neb. Rev. Stat. § 66-1838 (Supp. 2003)).
L.B. 1072 as introduced proposed to amend § 66-1838(15)(b) to "provide that the two hundred and ten day period would begin to run not from the initial filing but from the end of the sixty day certification period or the date that the commission receives notice or has accumulated documented evidence of the rejection of negotiations from cities representing over fifty percent of the ratepayers, whichever is earlier." Committee Recordson L.B. 1072, 100th Leg., 2nd
Sess., Introducer's Statement of Intent at 1 (Feb. 12, 2008) ["Committee Records on L.B. 1072"]. The history reflects the amendment was intended to "help insure that the commission (and the public advocate) had sufficient time to pursue proper investigations of rates if negotiations will not be proceeding and would also minimize the impact of interim rates." Id. An amendment to the introduced version was proposed which changed the 210 day period to 180 days. AM1843 to 2008 Neb. Laws L.B. 1072. This amendment was proposed by NorthWestern Energy, and the Commission agreed to this compromise proposal. Committee Records on L.B. 1072 at 3-5. Discussing the amendment, a representative of NorthWestern noted that, including the authority in § 66-1838(c) for the Commission to extend the time period for final action in either subsections (a) or (b) of § 66-1838 by 60 days, the amendment would allow the Commission to extend the date for final action "to 300 days,. . .a month shorter than it would be with LB1072. . .", but "a month longer than it would be under the current law." Id. at 5. The bill's Principal Introducer and Chairperson of the Urban Affairs Committee reiterated this view of the compromise, explaining that the bill originally proposed allowing the Commission 210 days, and that this period "would be shortened to 180 days. . ." under the amendment, but "the time *Page 9 
period would still continue to run from the end of the 60-day certification period or the date that the commission receives notice or determines that cities representing over 50 percent of the ratepayers have rejected negotiations, whichever is earlier. . .", which meant that, "[i]n essence, the amendment provides that the total time available for [ ] commission action would be reduced by 30 days." Floor Debate on L.B. 1072, 100th
Leg., 2nd Sess. at 76 (March 27, 2008) (Statement of Sen. Friend).
Generally, resort to legislative history to aid in the construction of a statute is appropriate only "when its terms require interpretation or may reasonably be considered ambiguous."American Employers Group, Inc. v. Dep't of Labor,260 Neb. 405, 413-14, 617 N.W.2d 808, 815 (2000). As noted previously, the provisions of § 66-1838(15)(b) are plain and unambiguous, and mean that, if a general rate filing is not certified for negotiations, the Commission must take "final action within one hundred eighty days after the date of the expiration of the sixty-day period provided for in subsection (4) of this section or the date that the commission receives notice or has accumulated written documentary evidence on file from cities representing more than fifty percent of the ratepayers within the affected cities, whichever is earlier, if such notice or documents either expressly reject negotiations or reject such a resolution." That includes situations where the filing is not certified for negotiations because a jurisdictional utility has stated its intent not to negotiate in its general rate filing. Thus, resort to legislative history is likely not necessary or appropriate.
To the extent application of the 180 day time period for Commission final action in § 66-1838(15)(b) is deemed ambiguous, it is proper to "examine the legislative history of the statute to ascertain the Legislature's intent." Goolsby v. Anderson,250 Neb. 306, 309, 549 N.W.2d 153, 156 (1996). The history recited above indicates the amendment was primarily concerned with providing the Commission and Public Advocate with sufficient time to conduct a rate change review proceeding in cases where negotiations were possible, but were not certified. As noted by Commissioner Boyle, § 66-1838(15)(b) allowed the Commission 210 days after filing to take final action on a rate case, which, if affected cities did not provide notice sufficient for the Commission to certify negotiations within 60 days of the rate filing, resulted in the Commission "assum[ing] the case with as few as 150 days left on the clock." Committee Records on L.B. 1072 at 3. Commissioner Boyle noted that the original bill "would allow a full 210 days in this event. . .", but that the Commission could accept the amendment to 180 days proposed by NorthWestern Energy. Id. The Public Advocate testified the 210 day time period in the original bill was preferable, and that the amendment which proposed to change that period to 180 days was "a poor compromise, but [was] better than the current situation where the clock would start running from the date of filing." Id. at 4.
While the amendment was apparently intended to address the time period for Commission action in situations where negotiations were possible but affected cities either failed to act within 60 days of filing or declined to negotiate, it is evident that the purpose of the change was to ensure the Commission and Public Advocate had adequate time to conduct a rate change proceeding for filings not certified for negotiations. It is true that construing the provision to apply to cases where *Page 10 
negotiations are not certified due to a jurisdictional utility's provision of notice of its intent not to negotiate in its filing results in the Commission receiving 30 days more to decide a rate review than the time period provided under subpart (a) of § 66-1838(15) when negotiations are conducted and fail. There is no indication, however, that the Legislature intended to reduce the time available for the Commission to act on a rate filing not certified for negotiations due to a jurisdictional utility's notice of its intent not to negotiate to 180 days from the date of filing, which would provide less time for Commission action than the 210 day time period allowed under § 66-1838(15)(a). A statute should be interpreted in a manner which avoids "absurd, unconscionable, or unjust results." In re Estate of Eickmeyer,262 Neb. 17, 22, 628 N.W.2d 246, 250 (2001). We believe it would be unreasonable to construe the statute in this manner, and would be contrary to the Legislature's evident intent and purpose in adopting the amendment, which was to ensure adequate time for the Commission and Public Advocate to conduct a rate review proceeding when negotiations are not certified, even if certification cannot occur because a jurisdictional utility has given notice of its intent not to negotiate.
 CONCLUSION
We conclude that it would be contrary to the intent and purpose of the Legislature's establishment of a time deadline for filings which are not certified for negotiations to construe § 66-1838(15)(b) as not applying to filings in which the jurisdictional utility has determined not to negotiate. We further conclude that, under the plain language of § 66-1838(15)(b), the only triggers for the 180 time period established in § 66-1838(15)(b) are either (1) expiration of the 60 day period in § 66-1838(15)(4), or (2) receipt by the Commission of notice of rejection of negotiations from affected cities. We recognize that, in cases in which a jurisdictional utility expresses its intent not to negotiate in its rate filing, this will effectively mean that the 180 day period will commence after expiration of the 60 day period in § 66-1838(4), as the other statutory trigger for the period cannot apply because affected cities cannot reject negotiations in that instance. Nothing in the language of § 66-1838(15)(b) or the history of its adoption, however, purports to establish the filing by the jurisdictional utility as the date for commencement of the 180 day period for Commission final action under § 66-1838(15)(b), even if the filing includes notice of the jurisdictional utility's intent not to negotiate. As a result, in cases not certified for negotiations due to a jurisdictional utility's expression of its intent not to negotiate in its filing, the 180 day time period for Commission final action will commence after expiration of the 60 day period in § 66-1838(4), or 60 days after the date of the rate filing.
While we believe this conclusion best comports with the intent and purpose of § 66-1838(15)(b), if a court ultimately were to decide that the Commission must act within 180 days of filing in cases not certified for negotiations due to a jurisdictional utility's stated intent not to negotiate in its filing, the filed rates may be held to have become final prior to the Commission's action on the application if the Commission has not acted within this time period. In light of this risk, the Commission may wish to consider if it is advisable to take final action within 180 days on any application filed by a *Page 11 
jurisdictional utility stating its intent not to negotiate, although we understand it may be difficult to hear and decide the application within this time frame. The Commission may also consider seeking legislation to clarify the amount of time allowed the Commission for final action on an application in which a jurisdictional utility expresses its intent not to negotiate. *Page 12 
 Very truly yours, JON BRUNING Attorney General
 ____________________________ L. Jay Bartel Assistant Attorney General
 Approved: ____________________________ Attorney General
[1] "Natural gas public utility means any corporation, company, individual, or association of persons or their trustees, lessees, or receivers that owns, controls, operates, or manages, except for private use, any equipment, plant, or machinery, or any part thereof, for the conveyance of natural gas through pipelines in or through any part of this state." Neb. Rev. Stat. § 66-1802(15) (2009). The term "natural gas utility" does not include any natural gas utility owned or operated by a city or metropolitan utilities district, companies engaged in marketing or selling compressed natural gas for end use as motor vehicle fuel, or any gas gathering system or interstate pipeline.Id.
[2] A "jurisdictional utility" is defined as "a natural gas public utility subject to the jurisdiction of the [C]ommission." Neb. Rev. Stat. § 86-1802(13) (2009).
[3] "General rate filing means any filing which requests changes in overall revenue requirements for a jurisdictional utility but does not include a filing for an infrastructure system replacement cost recovery charge. . . ." Neb. Rev. Stat. § 66-1802(8) (2009).
[4] The statute appears to contain a drafting error, as the phrase "review by the commission" is mistakenly inserted in the statute in the blank area quoted above, but should actually be placed as noted in the parenthetical in the portion of the statute referring to the commencement of proceedings for Commission review.